THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT
T. OESTREICHER, Appellant.*

Court of Special Sessions of City of New York, Appellate Part, Second
Department, October 26, 1940.

*Shepard Broad,* for the appellant.

*William O'Dwyer, District Attorney* [*J. Vincent Keogh* of counsel],
for the respondent.

BAYES, P. J. Appeal by defendant from judgment rendered in
the Tenth District Magistrates' Court, Brooklyn, on January 24,
1940, convicting him of a violation of section 436-2.0 of chapter
18 of the Administrative Code of the City of New York, and impos-
ing a fine of twenty dollars. The complaint charged that on
August 16, 1939, the defendant did " unlawfully operate a sight-

* See, also, 173 Misc. 147.

seeing bus such as is defined by Chapter 18, section 436–2.0, subdivision p [Chap. 18, § 436–2.0, subd. b, ¶ 2, cl. (p)], of the administrative code without having first secured a license for said bus which was operated for hire as such sight-seeing bus under private contract for specific or special trips."

The testimony discloses that the defendant was a licensed hack driver employed by the Children's Bus Service, Inc.; that the vehicles owned by this company are, during the school year, September to July, employed by the board of education of the city of New York to transport children back and forth between their homes and schools; that on the day referred to in the complaint, August 16, 1939, the school children of the city were on vacation and defendant's employer had entered into a contract with the Manhattan Beach Day Camp to transport the camp children to and fro between their homes and the camp daily, except Sundays and holidays; that the company merely furnished the transportation and when the weather conditions were unfavorable for outdoor recreation the children were taken on trips to movies, museums or botanical gardens, etc., within as well as without the city at the direction of a camp employee.

The complaining witness, a police officer, testified that he followed defendant as the latter drove about picking up the children for transportation to the camp, and at Flatlands and Pennsylvania avenues intercepted him and charged him with the commission of the offense.

Subdivision 43-a of section 436–2.0 of chapter 18 of the Administrative Code of the City of New York is as follows:

" 43-a. (a) Any person, who shall permit another to operate or who shall knowingly operate or offer to operate for hire any vehicle as a taxicab, coach, horse drawn cab or sight-seeing bus in the city of New York, without first having obtained an appropriate license therefor, shall be guilty of a violation hereof, and upon conviction before any city magistrate, shall be punished by a fine not exceeding one hundred dollars or imprisonment not exceeding thirty days, or both such fine and imprisonment."

The conviction herein rests upon a finding that the bus or vehicle in question is a sight-seeing bus. For a definition of a sight-seeing bus we must turn to clause (p) of paragraph 2 of subdivision (b) of section 436–2.0, which reads as follows:

" (p) ' Sight-seeing bus ' shall mean a motor vehicle designed to comfortably seat and carry eight or more passengers operating for hire from a fixed point in the city of New York to a place or places of interest or amusement, and shall also include a vehicle, designed as aforesaid, which by an oral or written contract is

let and hired or otherwise engaged for its exclusive use for a specific or special trip or excursion from a starting point within the city of New York."

It is clear from the record that the bus in question was chartered for the purpose of taking children to and from camp and was only used incidentally to visit museums, etc., under the conditions heretofore referred to. Even if it were conceded, contrary to the fact, that the bus in question was a sight-seeing bus, the People failed to establish that it was used to carry passengers " for hire from a fixed point in the city of New York to a place or places of interest or amusement." Furthermore, it does not appear that the bus was engaged " for its exclusive use for a specific or special trip or excursion from a starting point within the city of New York." We may add that in our opinion the statute contemplates that to come within it the hiring must be of a character such that the general public may upon payment of the tariff, board the bus and be transported to some point of destination. In the present case the use of the vehicle was under charter for private purposes and the visit to any particular place of public interest was merely collateral and incidental. As to the type of bus, there was testimony that it was especially built for children although it might be used by adults. There is also testimony to the effect that the company's income from the operation of its buses under contract with the board of education of the city of New York amounted to ninety-two per cent of the gross annual revenue while the income from special charter of the type here under consideration amounted only to eight per cent. (See *People* v. *Central Greyhound Lines, Inc.*, 173 Misc. 487; also, *People* v. *Weisberger*, 282 N. Y. 1.)

Accordingly the judgment of conviction should be reversed and the complaint dismissed.

DE LUCA and SALOMON, JJ., concur.